UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, et al., <br><br> Plaintiffs/Movants, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., <br><br> Defendants/Respondents. | Civil Action No. 23-3386 (PGS) (RLS) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

**SINGH, United States Magistrate Judge**.

    **PRESENTLY** before the Court is a Motion by Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation (collectively, "Cognizant") to compel the United States Department of Homeland Security ("DHS") Office of the Inspector General ("DHS-OIG") and the United States Citizenship and Immigration Services ("USCIS") (collectively, the "Government") to produce records responsive to requests and subpoenas served pursuant to DHS's administrative procedures.[1] On April 28, 2023, Cognizant initiated the above-captioned matter in the United States District Court for the District of Columbia; on June 6, 2023, the District of Columbia transferred this matter to this Court because the underlying action is pending here, at *Franchitti v. Cognizant Tech. Solutions Corp.*, Civ. No. 17-6317 (D.N.J.)[2] (the "Underlying Action").[3] The Court considers the Motion together with briefing related to the

---

[1] Civ. No. 23-3386, Doc. No. 1; *see also* Civ. No. 17-6317, Doc. Nos. 100-3, -4, and -7.
[2] Citations herein reference the respective Civil Action Numbers for both the above-captioned matter and the Underlying Action.
[3] Civ. No. 23-3386, Doc. Nos. 1, 6.

1

subpoenas that had been filed in the Underlying Action, including the Agencies' Cross-Motion to Quash.[4] On March 11, 2024, the Court heard oral argument on the Motions. For the reasons set forth below, and for good cause shown, the Court DENIES Cognizant's Motion to Compel and GRANTS the Government's Cross-Motion to Quash.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As the facts are well-known to the parties and the Court, they are not set forth at length. Instead, only those facts and procedural history related to the instant Motions are discussed herein.

### A. THE UNDERLYING ACTION

The above-captioned matter relates to a *qui tam* matter initiated on August 22, 2017 by Relator Jean-Claude Franchitti ("Relator"), whom Cognizant had previously employed. In general terms, Relator alleges that Cognizant fraudulently misused certain work visas to import and employ foreign workers in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.[5] The United States declined to intervene by way of Notice of Election publicly filed on July 17, 2020.[6] On January 27, 2021, Relator filed a First Amended Complaint ("FAC") in response to Cognizant's motion to dismiss.[7] On February 17, 2021, Cognizant moved to dismiss the FAC.[8] On August 17, 2021, the Court granted in part and denied in part Defendants' motion to dismiss,

---

[4] *See* Civ. No. 17-6317, Doc. Nos. 100, 104, 111, 124, and 134. On June 29, 2023, counsel for Cognizant filed a letter on the docket in the Underlying Action requesting that the Court "consider the authorities submitted in the . . . briefing on the D.N.J. Motion[] to Compel instead of the authorities submitted in the briefing on the D.D.C. Motion[] to Compel." Civ. No. 17-6317, Doc. No. 166. The Agencies consented to Cognizant's letter and the requests raised therein. The Court thus considers the parties' briefs filed in the Underlying Action to the extent that the arguments raised therein bear on the instant Motion, including the Agencies' Cross-Motion.
[5] *See generally* Civ. No. 17-6317, Doc. No. 1.
[6] *See* Civ. No. 17-6317, Doc. No. 4.
[7] Civ. No. 17-6317, Doc. Nos. 16, 17.
[8] Civ. No. 17-6317, Doc. No. 18.

sustaining Relator's reverse false claim under 31 U.S.C. § 3729(a)(1)(G) while dismissing Relator's FCA claims under 31 U.S.C. § 3729(a)(1)(A) and (B).[9]

On or about May 19, 2022, Cognizant served requests pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy*"), together with a subpoena on USCIS, seeking the production of certain documents (the "USCIS Subpoena").[10] On August 19, 2022, Cognizant served a subpoena and *Touhy* request on DHS-OIG, seeking the same documents (the "DHS-OIG Subpoena").[11]

### B. THE USCIS SUBPOENA AND *TOUHY* REQUESTS

Through the USCIS Subpoena, Cognizant sought the following documents:

a) All requests under the Freedom of Information Act ("FOIA") that USCIS has received from August 22, 2007 to present related to the use of the H-1, L-1, or B-1 visa programs by Cognizant, and any documents produced in response to those FOIA requests;

b) All documents and communications related to analyses, audits, or reviews that USCIS has performed related to Cognizant's use of the L-1, B-1, or H-1B visa programs, from August 22, 2007 to present;

c) All documents and communications related to analyses, reports, audits, or reviews that USCIS has undertaken of other employer sponsors'[12] use of the L-1, B-1, or H-1B visa programs from August 22, 2007 to present; and

d) All documents and communications related to analyses, audits, or reviews of employer sponsors', including Cognizant's, payment of visa application fees, from August 22, 2007 to present; and

e) All communications to, or from, third parties about Cognizant's use of employment-based visa programs, including but not limited to communications with Relator or Relator's counsel or other agents.[13]

---

[9] *See generally* Civ. No. 17-6317, Doc. No. 32.
[10] Civ. No. 17-6317, Doc. No. 100-3 at p. 2, 6.
[11] Civ. No. 17-6317, Doc. No. 100-7 at p. 2, 6.
[12] Cognizant identified the following as companies similarly situated: Tata Consultancy, Infosys, Deloitte, Capgemini, Accenture, Wipro, and IBM (the "Similarly Situated Employers"). *See* Civ. No. 17-6317, Doc. No. 100-5 at p. 10.
[13] Civ. No. 23-3386, Doc. No. 1-3 at p. 6.

Following service of the USCIS Subpoena, USCIS issued a formal *Touhy* response letter on June 16, 2022, in which it declined to produce many of the records requested.[14] Through that letter, USCIS contended that 6 C.F.R. § 5.48 precluded it from responding to the requests.[15] USCIS also noted that Cognizant did not provide authorization for it to disclose personal records restricted from disclosure through its regulations and/or the Privacy Act of 1974, 5 U.S.C. § 552a (the "Privacy Act").[16] USCIS also asserted that various additional statutory or regulatory restrictions "may" bar disclosure of certain responsive documents.[17] Additionally, USCIS maintained that Cognizant failed to show that the sought after records could not be obtained through alternative means, and that given USCIS's non-party status, compliance with Cognizant's requests would be unduly burdensome.[18]

On August 4, 2022, Cognizant met and conferred with USCIS, at which point Cognizant agreed to "prioritize" certain of its document requests and to provide USCIS with search terms to assist it with a search of its FOIA database.[19] Cognizant provided USCIS with a list of search terms and USCIS components that Cognizant believed may have documents responsive to its *Touhy* requests.[20] In light of USCIS's concerns regarding documents that may be protected against disclosure under the Privacy Act, Cognizant agreed to narrow its requests to exclude materials

---

[14] *See generally* Civ. No. 17-6317, Doc. No. 104-5.
[15] Civ. No. 17-6317, Doc. No. 104-5 at p. 3.
[16] Civ. No. 17-6317, Doc. No. 104-5 at pp. 2-3 (citing 5 U.S.C. § 552a; 6 C.F.R. § 5.44).
[17] Civ. No. 17-6317, Doc. No. 104-5 at p. 4.
[18] Civ. No. 17-6317, Doc. No. 104-5 at p. 4.
[19] Civ. No. 17-6317, Doc. No. 100-2 at p. 4.
[20] Civ. No. 17-6317, Doc. No. 100-5 at pp. 10-11; Civ. No. 17-6317, Doc. No. 111-2 at pp. 22-23.

"legitimately protected" under the Act.[21]  Thereafter, USCIS searched its FOIA databases and eventually produced records related to two FOIA requests.[22]

### C. THE DHS-OIG SUBPOENA AND *TOUHY* REQUESTS

Cognizant initially served a subpoena upon DHS.[23]  However, after follow-up, Cognizant served an identical subpoena on DHS-OIG on August 19, 2022, which sought the same records as those sought through the USCIS Subpoena.[24]  On September 1, 2022, DHS-OIG responded to the Subpoena.[25]  With the exception of conducting a search of its FOIA database, the Agency declined to search and produce any responsive records, contending that Cognizant failed to meet its *Touhy* regulations.  DHS-OIG argues that the requests sought irrelevant and overbroad material, the production of which would be unduly burdensome.  The component further advised that some of the sought-after material may be available through other means and may be subject to an assertion of privilege, such as the law enforcement privilege, attorney-client privilege, deliberative process, or the executive privilege.  DHS-OIG nonetheless informed Cognizant that it did not locate responsive information within its FOIA Unit and directed Cognizant to three public reports that may be relevant to its requests.[26]  Following meet and confers, on October 13, 2022, DHS-OIG sent Cognizant a follow-up letter regarding the Subpoena.  In that letter, DHS-OIG reiterated its objections but stated that the Office of Audits and Office of Inspections and Evaluations had

---

[21] Civ. No. 17-6317, Doc. No. 111-2 at p. 7.
[22] *See* Civ. No. 17-6317, Doc. No. 104-6.
[23] *See generally* Civ. No. 17-6317, Doc. No. 100-4.
[24] Civ. No. 17-6317, Doc. No. 100-7 at p. 2.
[25] Civ. No. 17-6317, Doc. No. 100-9.
[26] Civ. No. 17-6317, Doc. No. 100-9 at pp. 7-8.

conducted preliminary searches and referred Cognizant again to three publicly available reports that may be responsive to its requests.[27]

### D.  THE MOTION TO COMPEL AND CROSS-MOTIONS TO QUASH

On December 23, 2022, Cognizant filed in the Underlying Action a Motion to Compel the Government to comply with the respective subpoenas.[28]  The Government opposed the Motion and cross-moved to quash the Subpoenas.[29]  On January 30, 2023, Cognizant replied in support of its Motion and in opposition to the Cross-Motion.[30]  The Government filed a Reply in support of their Cross-Motion, in response to which Cognizant filed a Sur-Reply with leave of Court.[31]  On April 6, 2023, the Court denied without prejudice both Cognizant's Motion and the Government's Cross-Motion as not properly before this Court pursuant to Federal Rule of Civil Procedure 37(a)(2) and 45(d)(3).[32]

On April 28, 2023, Cognizant initiated the above-captioned matter through a Motion to Compel Discovery filed in the District Court for the District of Columbia.[33]  On the same day, Cognizant filed a Consent Motion to Transfer this action to the District of New Jersey, citing the pending Underlying Action.[34]  On June 6, 2023, the District of Columbia transferred this action to this Court.[35]

---

[27] Civ. No. 17-6317, Doc. No. 100-11.
[28] Civ. No. 17-6317, Doc. No. 100.
[29] Civ. No. 17-6317, Doc. No. 104.
[30] Civ. No. 17-6317, Doc. No. 111.
[31] *See* Civ. No. 17-6317, Doc. Nos. 124, 127, 134.
[32] Civ. No. 17-6317, Doc. No. 150.
[33] Civ. No. 23-3386, Doc. No. 1.
[34] *See generally* Civ. No. 23-3386, Doc. No. 2.
[35] Civ. No. 23-3386, Doc. No. 6.

Through its Motion, Cognizant seeks to compel responses to its requests for documents and communications related to analyses, reports, audits, or reviews conducted by USCIS or DHS-OIG of Cognizant's or similar employers' use of the L-1, B-1 or H-1B visa programs and payment of visa application fees, as well as "documents and communications between the Agencies and third parties, including Relator. . ., regarding Cognizant's use of employment-based visa programs."[36] Cognizant argues that it satisfied DHS's *Touhy* regulations, pointing out that it seeks information relevant to the Public Disclosure Bar and the elements of Relator's FCA claims. Cognizant further maintains that the Government does not properly assert any privilege objections here because it has not submitted any privilege log. Cognizant adds that any burdensome arguments are a function of the nature of the claims asserted by Relator.

The Government opposes the Motion and seeks to quash the Subpoenas because they contend that the Requests are overbroad, seeking irrelevant, protected, and/or burdensome material.[37] With leave of Court to supplement the record, on October 18, 2023, the Agencies filed Declarations in support of their opposition and Cross-Motion.[38] The Agencies proffered the Declaration of M. David Arnold, the Director of the National Records Center for USCIS (the "Arnold Declaration"), as well as the Declaration of Roy Jones, the FOIA Officer and Chief of the Information Law and Disclosure Division ("ILD") at DHS-OIG (the "Jones Declaration").[39]

In his Declaration, Mr. Arnold avers that USCIS does not possess documents responsive to Cognizant's requests for information regarding B-1 visas, as other governmental agencies

---

[36] Civ. No. 17-6317, Doc. No. 100-1 at pp. 8-9.
[37] *See* Civ. No. 17-6317, Doc. No. 104-1; *see also* Doc. No. 124 at pp. 11-12 (noting that just one of the Similarly Situated Employers has submitted tens of thousands of H-1B visa petitions in 2022 and 2023 alone).
[38] Civ. No. 17-6317, Doc. No. 177.
[39] Civ. No. 17-6317, Doc. No. 177.

7

process those visa applications.[40] As to the L-1 and H-1B visa applications, Mr. Arnold proffers that to search, cull, review and produce the documents (which are maintained largely in non-electronic form), would cause USCIS to incur significant financial costs and disrupt its core functions. Mr. Arnold states that there are approximately 3,195,682 files consisting of over one billion pages that are potentially responsive to Cognizant's Requests. The Arnold Declaration further asserts that USCIS would potentially need to purchase $1.7 million worth of high-speed document scanners, expend over 831,000 work hours, and employ over 500 contractors over a twelve-month period to collect, review, and produce such a volume of material.[41] Mr. Arnold also points out that the Agency would need to secure additional storage space to store and process the information.[42] Mr. Arnold further avers that the other employers for which Cognizant seeks information account for over ten percent of H-1B and L-1 visa petitions submitted since 2007, and therefore Cognizant's proffered search terms do not alleviate the burden on USCIS.[43]

On behalf of DHS-OIG, Mr. Jones, in relevant part, similarly details the burdensome nature of conducting a search in response to the outstanding topics in the DHS-OIG Subpoena.[44] Mr. Jones avers a reasonable search would require 750 employees to individually search their hard copy and electronic files over a fifteen-year period for any documents "related to" DHS-OIG's analyses, audits, or reviews.[45] Per Mr. Jones, those employees would then need to review the documents for responsiveness, conduct a review for privileged or otherwise confidential

---

[40] Civ. No. 17-6317, Doc. No. 177-1 at ¶ 5(a) n.1.
[41] Civ. No. 17-6317, Doc. No. 177-1 at ¶ 14.
[42] Civ. No. 17-6317, Doc. No. 177-1 at ¶ 16.
[43] Civ. No. 17-6317, Doc. No. 177-1 at ¶ 15.
[44] Civ. No. 17-6317, Doc. No. 177-2.
[45] Civ. No. 17-6317, Doc. No. 177-2 at ¶ 12. Following the service of the Subpoenas at issue, the Court limited the relevant time period to 2011 through 2020. *See* Civ. No. 17-6317, Doc. No. 147 at p. 10; Civ. No. 17-6317, Doc. No. 177-2 at ¶ 16.

information, and apply any necessary redactions, all of which would be subject to further levels of review.[46] The Jones Declaration further explains the lack of specificity to the requests and concerns arising under the Privacy Act and DHS privacy policies, which further compounds the burden to DHS-OIG.[47] In addition, Mr. Jones states that responsive documents may include documents protected by the deliberative process privilege and/or the law enforcement privilege.[48] As a result, Mr. Jones asserts that responding to the DHS-OIG Subpoena would deplete the resources of his component and detract from its primary official business.[49]

Cognizant responded to the Government's Declarations, re-emphasizing the government's interest in this FCA matter and Cognizant's need for information to defend against Relator's broad claims.[50] Cognizant further points out it does not seek "any individual L-1, B-1, or H-1B filing" but rather analyses, audits, or reviews of: (1) Cognizant's or Similarly Situated Employers' use of the visa programs and (2) about payment of application fees.[51] According to Cognizant, such clarification should minimize any undue burden.

## II.     LEGAL STANDARDS

Generally, parties may seek discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and that is "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The information need not be admissible at trial. *Id.* The scope of discovery is broad but not limitless, and discovery

---

[46] Civ. No. 17-6317, Doc. No. 177-2 at ¶¶ 20-24.
[47] Civ. No. 17-6317, Doc. No. 177-2.
[48] Civ. No. 17-6317, Doc. No. 177-2 at ¶ 22.
[49] Civ. No. 17-6317, Doc. No. 177-2 at ¶¶ 28-29.
[50] Civ. No. 17-6317, Doc. No. 180.
[51] Civ. No. 17-6317, Doc. No. 180 at p. 4.

cannot "be used as a general fishing expedition." *Burgess v. Galloway*, Civ. No. 20-6744, 2021 WL 2661290, at *2 (D.N.J. Jan. 28, 2021) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

A party may move to compel discovery from a non-party. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a). A party seeking to compel records from a non-party federal governmental agency may seek review either "through a separate action commenced pursuant to the [APA], or alternatively, in the Court from which the subpoena was served pursuant to Rule 45." *Aiken v. Eady*, Civ. No. 14-1811, 2016 WL 452135, at *5, *5 n.2 (D.N.J. Feb. 4, 2016) (noting that while there is no binding authority on whether an ancillary action under the APA must be filed or whether the issue may be considered as a discovery dispute in the underlying case, "[t]he majority view seems to be to consider the dispute as a discovery matter in the underlying litigation" (citing *Johnson v. Folino*, 528 F. Supp. 2d 548, 550-51 (E.D. Pa. 2007))). A district court "has broad discretion regarding the enforcement of subpoenas." *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, Civ. No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (citation omitted).

Here, Cognizant and the Government dispute whether the applicable standard of review arises under Rule 45 of the Federal Rules of Civil Procedure or the APA.[52] The applicable standard in this context remains unresolved; accordingly, the Court addresses both the APA and Rule 45. *See Mickendrow v. Watner*, Civ. No. 20-007, 2021 WL 2821176, at *3 n.5, *5 (D.N.J. July 7, 2021) (after holding that agency's decision was not arbitrary and capricious, declining to conduct "the less deferential Rule 45 analysis" as "the result would be the same"); *Johnson*, 528 F. Supp.

---

[52] The parties do not dispute that the Motions are properly presented to this Court without the need to file an ancillary action under the APA.

at 551 (applying Rule 45 where a motion to compel would not be granted under either standard); *see also Harris v. McDonald*, Civ. No. 21-1851, 2022 WL 3599394, at *2 (M.D. Pa. Aug. 23, 2022) (same); *Fermaintt v. McWane, Inc.*, Civ. No. 06-5983, 2008 WL 11383665, at *4 (D.N.J. Dec. 17, 2008).

    A.    THE APA

A party contesting government activity under the APA must show that the agency action was arbitrary and capricious. 5 U.S.C. § 706(2)(A). A court, therefore, reviewing an agency action under the APA cannot substitute its own judgement but will narrowly view the action "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. ---, ---, 140 S. Ct. 1891, 1905 (2020) (internal citations and editing and quotation marks omitted). The party challenging an agency action bears the burden of showing that the action was not rational, but rather was arbitrary and capricious. *See Am. Farm Bureau Fed'n v. E.P.A.*, 984 F. Supp. 2d 289, 309 (M.D. Pa. 2013), *aff'd*, 792 F.3d 281 (3d Cir. 2015) (citing *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010); *Taggart v. GMAC Mortg., LLC*, Civ. No. 12-415, 2013 WL 4079655, at *3 n.6 (E.D. Pa. Aug. 12, 2013)). As a result, a court will not set aside the Government's decisions as to the Subpoenas if the decisions were rational and based on the relevant applicable factors. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

    B.    FEDERAL RULE OF CIVIL PROCEDURE 45

Pursuant to the Federal Rules of Civil Procedure, the Court may compel a non-party to produce documents or permit an inspection of records. *See* Fed. R. Civ. P. 34(c); Fed. R. Civ. P. 45(d), (e). The scope of discovery as defined by Rule 26 similarly applies to discovery sought via a Rule 45 subpoena on a non-party. *See in re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501

(D.N.J. 2021); *accord E.S. by and through Sanchez v. Elizabeth Bd. of Educ.*, Civ. No. 20-1027, 2022 WL 2106382, at *2 (D.N.J. June 10, 2022). Nevertheless, "a non-party to litigation is afforded greater protection from discovery than a party." *Burgess*, 2021 WL 2661290, at *3 (citing *Chazanow v. Sussex Bank*, Civ. No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014)).

In certain instances, the Court has authority to modify a subpoena and "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or wavier applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see also Schmulovich v. 1161 Rt. 9 LLC*, Civ. No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). An undue burden can exist when the subpoena is "unreasonable or oppressive." *In re Lazardis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (quoting *Schmulovich*, 2007 WL 2362598, at *4).

## III. DISCUSSION

As a threshold matter, the Government, while technically not a party to the Underlying Action, is not disinterested. Indeed, in the FCA context, the United States has an interest in and rights to this Underlying Action as a real party in interest. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 430 (2023) ("Even as a non-party, the Government retains an interest in the suit, and possesses specified rights."); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). While the United States declined to intervene, the United States may subsequently intervene, should it choose to do so. 31 U.S.C. § 3730(c)(3). Moreover, the Underlying Action asserts theories that relate to whether Cognizant misused the visa programs processed through USCIS and DHS and its components. Simply, USCIS and DHS-OIG are not disinterested parties in this context.

A. **DHS'S *TOUHY* REGULATIONS**

DHS has promulgated regulations pursuant to 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), to apply to requests for the production of its records. *See* 5 U.S.C. § 301; 6 C.F.R. §§ 5.41-5.49. Accordingly, to obtain records from DHS or its components, a requestor must submit a written statement that summarizes the information sought and its relevance to the proceeding. *See* 6 C.F.R. § 5.45(a). DHS and its components cannot produce responsive records without first obtaining the appropriate internal approval. 6 C.F.R. § 5.44. In determining whether it may produce records, DHS considers whether disclosure is precluded under 6 C.F.R. § 5.48, which identifies a variety of considerations. 6 C.F.R. § 5.48(a) (requiring consideration, "among any other pertinent considerations," of whether responding to a *Touhy* request would: be unduly burdensome; violate applicable procedural rules governing the case; violate substantive law governing privilege and confidentiality; contravene the public interest; detract from the Department's ability to conduct official business; expend public money for private purposes; involve the Department "in controversial issues not related to its mission"; and upset the Department's impartial position in private litigation that lacks a substantial government interest).

B. **APPLICATION OF THE APA**

When considering whether an agency decision was arbitrary and capricious, "a court is not to substitute its judgment for that of the agency." *Dept. of Homeland Sec.*, 140 S. Ct. at 1905 (internal quotation marks and citation omitted); *accord Motor Vehicle Mfrs.*, 463 U.S. at 43. However, an agency must nevertheless base its decision on the factors available under the *Touhy* regulations to withstand scrutiny. *See id.*

Here, Cognizant sufficiently complied with DHS's *Touhy* requirements regarding the form of its *Touhy* requirements, identifying the "nature and relevance" of the sought after materials with

13

sufficient specificity.  *See* 6 C.F.R. § 5.45.  DHS-OIG asserts that Cognizant failed to comply with the requirement that a requesting party submit a written statement describing the "nature and relevance" of the materials sought "with as much specificity as possible[.]"[53]  6 C.F.R. § 5.45(a).  Yet, Cognizant has clarified what it seeks through the meet and confer process and cannot further identify potential sources absent more information from the components.  *See Biear v. Attorney General of the United States*, 905 F.3d 151, 157 (3d Cir. 2018) (finding, in the FOIA context, that it would be "counterintuitive" to require a requestor to identify specific units of an agency that might have the sought-after records).

Further, Cognizant reiterates that it seeks documents and communications related to the Agencies' analyses, audits, or reviews of Cognizant or the Similarly Situated Employers' use of the L-1, B-1, and H-1B visa programs and such visa application fees.  This information is relevant to the claims and defenses in dispute, including the Public Disclosure Bar and materiality issues, as such documents could show prior disclosure of Relator's allegations and/or that the government did not consider any alleged misrepresentations to have been material as defined under the FCA.  *See* 31 U.S.C. § 3730(e)(4)(A); *see, e.g.*, *United States ex rel. Carson v. Select Rehab., Inc.*, Civ. No. 15-5708, 2023 WL 5339605, at *12-13 (E.D. Pa. Aug. 18, 2023) (discussing where allegations against entities in an industry may or may not trigger the Public Disclosure Bar); *see also United States ex rel. Druding v. Care Alternatives*, 81 F.4th 361, 367 (3d Cir. 2023) (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 n.5, 194-95 (2016)) (discussing factors to consider under materiality requirement of the FCA).  USCIS and DHS-OIG

---

[53]  Civ. No. 17-6317, Doc. No. 100-11 at p. 3.

were aware of such relevancy as proffered by Cognizant and thus their refusal to respond to the Subpoenas on that basis was arbitrary and capricious.[54]

In addition, the decision to refuse to respond to the requests on the bases that responses may implicate the Privacy Act or some applicable privilege is similarly arbitrary and capricious. Indeed, Cognizant made clear that it expected the Government to withhold any responsive records covered by the Privacy Act. Any assertion of an applicable privilege is premature without the identification of specific documents or context such that it could be determined that a privacy concern or privilege actually attaches. *See United States ex rel. Franchitti v. Cognizant Tech. Sol. Corp.*, Civ. No. 17-6317, 2023 WL 2759075, at *7 (D.N.J. Apr. 3, 2023).

However, the real crux of DHS-OIG's and USCIS's refusals to respond to the requests appear focused on their burden analysis. Indeed, the Arnold and Jones Declarations clearly detail the extensive burden that would be imposed by Cognizant's requests. Notwithstanding, Cognizant contends that these Declarations are insufficient because they address the burden that would be imposed by a request seeking individual visa applications, which is not what Cognizant seeks. However, DHS-OIG's Declaration does address the burdens imposed by searches as proposed by Cognizant in the meet and confer process. During the meet and confers, Cognizant suggested that DHS-OIG conduct searches for "Cognizant", the Similarly Situated Employees, Relator, and his attorneys.[55] The Jones Declaration addresses the burdens associated with such searches, proffering that it would require numerous individual employees to conduct manual searches of their devices and hard files to be followed by extensive review for Privacy Act compliance and privileged redactions or withholdings.

---

[54] *See, e.g.*, Civ. No. 17-6317, Doc. No. 100-10.
[55] Civ. No. 17-6317, Doc. No. 100-10 at pp. 6-7.

15

As to USCIS, the record is less clear as to what Cognizant proposed during the meet and confer process.[56] Yet, it appears that Cognizant made the same proposal for search terms to USCIS. The Arnold Declaration sufficiently articulates the burden that would be imposed by such a search. Notably, while Cognizant argues that its requests are limited to documents and communications related to analyses, audits, or reviews of its and others' use of the visa programs, its proposed search terms appear to go beyond that. It is not clear how Cognizant anticipated DHS-OIG or USCIS to filter out any such individualized material other than what the components already performed in searching their FOIA databases. In this context, DHS-OIG and USCIS rationally determined that the extensive burdens that the requests would impose warranted a denial under DHS's *Touhy* regulations.[57]

As such, based on this record, Cognizant failed to establish that USCIS or DHS-OIG acted arbitrarily and capriciously in determining that DHS's *Touhy* regulations precluded further responses to the requests based on their consideration of the burdens that would be imposed in so responding, even when viewed with the nature of the claims and defenses asserted in the Underlying Action.[58] *See* 6 C.F.R. § 5.48(a); *in re 3M Combat Arms Earplug Prod. Liab. Litig.*,

---

[56] *See* Civ. No. 17-6317, Doc. Nos. 100-2 at ¶ 13(a) (Declaration of Reid F. Rector, stating that Cognizant's counsel proposed search terms for the FOIA database and a prioritization of requests during a teleconference between counsel); 100-10 at p. 7 (Letter from Cognizant to DHS-OIG, representing that USCIS "already agreed to conduct searches like the ones" suggested to DHS-OIG); 177-1 at ¶ 15 (Arnold Declaration, stating that Cognizant proposed prioritization of certain employer records).

[57] USCIS and DHS-OIG proffer burdensome arguments in the context of the time frame requested in the Subpoenas, rather than the timeframe the Court has applied to discovery between the parties. Because the Subpoenas were served before the Court's decision as to the relevant time period in the Underlying Action, it was not arbitrary and capricious for the Government to consider the breadth of the requests as served.

[58] It is not lost on the Court that Cognizant itself asserts undue burden arguments in response to Relator's request to Cognizant for individualized visa applications. Whether those specific requests are too burdensome on Cognizant is a separate evaluation. Similarly, the Court understands through correspondence of the parties that additional subpoenas and/or *Touhy* requests

No. 19-md-2885, 2021 WL 191680, at *3 (N.D. Fla. Jan. 19, 2021) (finding agency's denial of *Touhy* request was not arbitrary and capricious where agency sufficiently considered the undue burden that would be imposed by the request).

Accordingly, the Court finds USCIS and DHS-OIG did not arbitrarily or capriciously deny the *Touhy* requests.

    C.    APPLICATION OF RULE 45

Having found that the agencies' decisions here withstand scrutiny under the heightened standard of the APA, the Court considers their responses to the Subpoenas under Rule 45 of the Federal Rules of Civil Procedure. As discussed above, USCIS and DHS-OIG sufficiently established that responding to the Subpoenas would impose an undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A). Such undue burden as set forth in the Arnold and Jones Declarations, even in the context of the government's interest in this case, the needs of the parties, as well as the proportionality of the sought-after information, is "unreasonable or oppressive," warranting the quashing of the Subpoenas. *See id.*; *in re Lazardis*, 865 F. Supp. 2d at 524. While the Court, in its discretion, may modify the Subpoenas to narrow the requests in a way that more clearly targets a more narrow set of documents to address Cognizant's needs for discovery in this matter in balance with the burdens on an interested non-party, the Court declines to do so at this time, with the understanding that Cognizant has served other Subpoenas to the Government, the topics of which are not currently before the Court.[59]

---

may have been served on USCIS, DHS, and/or other governmental agencies. Whatever burdens may be imposed through those requests is not before the Court at this time.
[59] The Court strongly encourages the parties and the Government to meet and confer in good faith as to the scope of any such subpoenas, as there likely is an inflection point where the needs for discovery in the Underlying Matter outweigh any purported burdens imposed. For example, it appears that, without significant burden, DHS-OIG may be able to conduct searches for the "major

Accordingly, application of the Federal Rules of Civil Procedure leads the Court to the same conclusion when applying the APA.

IV.   **CONCLUSION**

For the reasons set forth above, the Government's decisions on the respective subpoenas and *Touhy* requests were not arbitrary and capricious, and the proffer of undue burden by the Government justifies an order quashing the Subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Therefore, for good cause shown,

**IT IS**, **THEREFORE**, on this **8th** day of **May 2024**, hereby

**ORDERED** that Cognizant's Motion to Compel Discovery from the United States Citizenship and Immigration Services and Department of Homeland Security Office of the Inspector General (Dkt. No. 1) is hereby **DENIED**; and it is further

**ORDERED** that the Cross-Motion to Quash by the United States Citizenship and Immigration Services and Department of Homeland Security Office of the Inspector General (Civ. No. 17-6317, Doc. No. 104) is hereby **GRANTED**; and it is further

**ORDERED** that the Clerk of Court is hereby directed to **TERMINATE** the Motion pending at Docket Entry No. 1; and it is further

---

contributors" of the public reports produced to Cognizant in response to the Subpoena at issue here.  *See* Civ. No. 17-6317, Doc. No. 177-2 at ¶ 16 n.1.

**ORDERED** that the Clerk of Court shall hereby mark this matter **CLOSED**.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**